J-S17041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THEOASIA JASMINE ANNELL | : | |
| ROTHWELL | : | |
| | : | No. 1855 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 8, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004626-2023

BEFORE:   PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:              **FILED AUGUST 7, 2026**

Appellant, Theoasia Jasmine Annell Rothwell, appeals from the judgment of sentence imposed by the Court of Common Pleas of Delaware County after the trial court found her guilty of simple assault, recklessly endangering another person ("REAP"), and harassment.[1] Appellant challenges the trial court's admission of surveillance videos and the sufficiency of evidence for all her convictions. Upon review, we affirm.

The evidence at trial established that, during the afternoon of May 25, 2023, Officer Mark Crawford of the Chester Police Department received a dispatch call concerning a fight in a convenience store. **See** N.T. Trial,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 2701(a)(1), 2705, and 2709(a)(1), respectively.

11/13/24, at 7, 9. Upon arriving, he entered the store and observed Appellant, her co-defendant, De'Angela Hatton, and the victim engaged in a "hair pull." *Id.* at 8. All three women were taken into custody and given citations. *See id.* at 34-36. Later, Officer Crawford obtained surveillance videos from the convenience store and charged Appellant and co-defendant Hatton. *See id.* at 9, 36. (OFFICER CRAWFORD: "Initially[, Appellant and co-defendant] were issued citations because I thought it was a regular [sic] fight, but after I viewed the video and saw the actual actions, [and] that's when I determined it needed to be criminal.").

At the bench trial, the Commonwealth introduced into evidence the first surveillance video, and Officer Crawford testified that the video fairly and accurately depicted the store on the day he responded. *See* N.T. Trial, 11/13/24, at 11-12; Commonwealth Trial Exhibit C-1 ("Surveillance Video One"). Counsel for both Appellant and co-defendant Hatton objected to the video, arguing that it has not been authenticated nor had a chain of custody been established. *See* N.T. Trial, 11/13/24, at 11-12. The trial court overruled the objection. *See id.* at 12.[2]

For Surveillance Video One, Officer Crawford identified Appellant, co-defendant Hatton, the victim, and the store's owner in the video. *See* N.T.

_____

[2] Appellant's counsel also objected on the basis that the videos violated Appellant's constitutional rights under the Confrontation Clause and the *corpus delecti* rule. *See* N.T. Trial, 11/13/24, at 12, 15-16. However, appellate counsel decided to forego argument before this Court on both of those grounds as well as on the chain of custody argument. *See* Appellant's Brief at 9, n. 9.

Trial, 11/13/24, at 22-23; Surveillance Video One at 13:11-12. He also identified himself entering the store in the video. *See* N.T. Trial, 11/13/24, at 23; Surveillance Video One at 13:16. Surveillance Video One depicted Appellant and her co-defendant entering the store and immediately attacking the victim. *See* N.T. Trial, 11/13/24, at 40.[3] Over the next minute, the victim is engaged with co-defendant Hatton while Appellant is seen repeatedly punching the back of the victim's head and body. *See id.* at 18.[4] During the fight, a metal rod used for hanging chips is dislodged and Appellant proceeded to beat the victim with the rod. *See id.* at 16-17, 22-23.

Afterwards, the Commonwealth introduced a second video, displaying a different camera angle where the fight continued into a separate aisle. *See* N.T. Trial, 11/13/24, at 25-26; Commonwealth Trial Exhibit C-2 ("Surveillance Video 2"). This video angle showed a shelf used to store metal canned goods. *See* N.T. Trial, 11/13/24, at 33. The video demonstrated that Appellant took the canned goods off the shelf and beat the victim with them. *See id.* at 33, 38.

Additionally, the Commonwealth introduced a third video, which presented another camera angle of the store that captured the fight taking

_____

[3] We rely on the trial transcript and the surveillance video timestamps provided therein.

[4] The Commonwealth, in its brief, indicates that "[i]n the first minute of the fight, Appellant punches the victim in the back of the head more than forty times with a closed first." Appellee's Brief at 3.

place. **See** N.T. Trial, 11/13/24, at 23; Commonwealth Trial Exhibit C-3 ("Surveillance Video Three"). Officer Crawford testified that third camera angle captured the front of the store and he identified an ice cream cooler at its entrance. **See** N.T. Trial, 11/13/24, at 29. Defense counsel for both Appellant and co-defendant Hatton renewed their objections for Surveillance Videos 2 and 3. **See** N.T. Trial, 11/13/24, at 25, 32.

Appellant did not testify and her defense counsel did not present any other evidence. **See id.** at 43-46, 48. After the one-day trial ended, the trial court found Appellant guilty of simple assault, REAP, and harassment by physical contact. **See** Verdict Slip, 11/14/25.[5]

On April 8, 2025, Appellant was sentenced to an aggregate term of thirty months of probation for all her convictions. **See** N.T. Sentencing Hearing, 4/8/25, at 11-12; Order (sentencing), 4/8/25. Then, Appellant filed a post-sentence motion seeking a new trial and arguing there was insufficient evidence to sustain her convictions. **See** Post-Sentence Motion, 4/17/25. On June 26, 2025, the trial court denied Appellant's post-sentence motion. **See** Order (denying post-sentence motion), 6/26/25. Appellant filed a timely notice of appeal, and she and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. **See** Notice of Appeal, 7/14/25; Rule 1925(b)

---

[5] Co-defendant Hatton was tried with Appellant in a case at docketed at CP-23-CR-0004627-2023, and was found guilty of simple assault, REAP, and harassment. **See** Trial Docket Number, CP-23-CR-0004627-2023. The record demonstrates Hatton did not challenge her convictions on appeal. **See id.**

Order, 7/30/25; Rule 1925(b) Statement, 8/20/25; Trial Court Opinion, 8/28/25.

Appellant raises the following four issues for our review:

I.   Whether the trial court erred when over Appellant's objection, it admitted into evidence video recordings of the alleged incident[,] where the Commonwealth failed to authenticate the videos by presenting sufficient evidence that the recordings were in fact what it claimed them to be when the Commonwealth's only witness, Officer Mark Crawford, was not present for the entirety of the alleged incident captured in the recordings?

II.  Whether the evidence was insufficient to support the charge of [REAP] where the Commonwealth failed to prove beyond a reasonable doubt that the alleged victim was placed in danger of death or serious bodily injury by any act of the Appellant?

III. Whether the evidence was insufficient to support the charge of simple assault where no alleged victim testified about any circumstances surrounding the alleged assault and the Commonwealth failed to prove beyond a reasonable doubt that Appellant intended to cause bodily injury to the alleged victim?

IV.  Whether the evidence was insufficient to support the charge of harassment where the Commonwealth failed to prove beyond a reasonable doubt that Appellant intended to harass, annoy[,] or alarm the alleged victim who did not testify?

Appellant's Brief at 4-5 (answers by trial court omitted).

Appellant, in issue one, argues that the trial court erred in overruling her objection at trial to admission of all three surveillance videos, where the

Commonwealth allegedly failed to establish the authenticity of the videos. *See*

Appellant's Brief at 16-20.[6]

Regarding a trial court's admission of evidence, this Court has recognized:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record.

*Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023)

(citations, quotation marks, and brackets omitted).

Pennsylvania Rule of Evidence 901 governs the authentication of evidence and states that "to satisfy the requirement of authenticating…an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "There are three basic types of evidence that are admitted into court: (1) testimonial evidence; (2) documentary evidence; and (3) demonstrative evidence." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006) (citation omitted). "Demonstrative evidence such as photographs, motion pictures,

---

[6] We note that the Commonwealth argues in their brief that Appellant waived her issue regarding the authenticity of the surveillance videotapes because she did not object at trial. *See* Appellee's Brief at 7. However, upon our review, we find that Appellant's counsel joined co-defendant's counsel in challenging each video's authenticity. *See* N.T. Trial, 11/13/24, at 11, 33. Therefore, the Commonwealth's argument is meritless, and we will review Appellant's claim.

diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." ***Id.*** (citing ***Nyce v. Muffley***, 119 A.2d 530, 532 (Pa. 1956)); ***see also Kopytin v. Aschinger***, 947 A.2d 739, 747 (Pa. Super. 2008) ("authentication must be sufficient to support a finding that the [video] fairly and accurately represents that which it purports to depict") (internal quotation marks and citations omitted).

"Generally, authentication requires a low burden of proof[.]" ***Commonwealth v. Jackson***, 283 A.3d 814, 818 (Pa. Super. 2022). Rule 901(b) provides a non-exhaustive list of "examples…of evidence that satisfies the requirement" of Rule 901(a). Pa.R.E. 901(b). Relevant to this appeal, evidence can be authenticated by the testimony of a witness with personal knowledge that the "item is what it is claimed to be." Pa.R.E. 901(b)(1). Additionally, evidence can be authenticated by "the appearance, contents, substance, internal patterns, or other distinctive characteristics of an item, taken together with all the circumstances." Pa.R.E. 901(b)(4). Further, "[i]t is not necessary that the maker of the videotape testify to the tape's accuracy; any witness familiar with the subject matter can testify that the tape was an accurate and a fair depiction of the events sought to be shown." ***Commonwealth v. Impellizzeri***, 661 A.2d 422, 428 (Pa. Super. 1995) (citations omitted).

Appellant argues that the Commonwealth's only witness, Officer Crawford, appeared at the end of the video and did not testify as to how the

video recordings were obtained. *See* Appellant's Brief at 19. She concedes that Officer Crawford could authenticate the recording of which he witnessed but he could "not possibly authenticate and represent that the recordings were a fair and accurate depiction of that which he did not observe." *Id.* Appellant also relies on the dissenting opinion of then Judge, now Justice, Donohue in *Commonwealth v. McKellick*, 24 A.3d 982 (Pa. Super. 2011), who stated the following:

> Our Supreme Court has defined demonstrative evidence as evidence that is "tendered for the purpose of rendering other evidence more comprehensible for the trier of fact." Demonstrative evidence is thus illustrative in nature, as it assists the trier of fact in better understanding other substantive evidence admitted at trial. For this reason, the videodisk at issue in this case cannot be demonstrative evidence – it cannot "render other evidence more comprehensible" because there is no other evidence to establish what occurred in connection with the traffic stop. If anything, the videodisk must be viewed as purported substantive evidence of McKellick's guilt.

Appellant's Brief at 20 (citing *McKellick*, 24 A.3d at 993 (Donohue, J., dissenting) (citations omitted)).[7]

Appellant asserts that Justice Donohue's dissenting opinion applies to the facts of this case because Officer Crawford did not have personal knowledge and was not present for the entire video, therefore the surveillance

---

[7] We note that dissenting opinions are not binding precedent. *See Commonwealth v. Davis*, 17 A.3d 390, 398 (Pa. Super. 2011) (stating the general rule that a decision lacks precedential value if it does not garner majority of the supporting judges both as to disposition and the principle of law expressed).

videos do not constitute demonstrative evidence. ***See*** Appellant's Brief at 20 ("[Officer] Crawford only observed three women pulling one another's hair.").

The majority in ***McKellick*** concluded that although the original officer present during the video recording of a traffic stop was unavailable, the video constituted demonstrative evidence because the Commonwealth sufficiently authenticated the recording pursuant to Rule 901(a). ***See McKellick***, 24 A.3d at 989. Appellant contends the majority opinion in ***McKellick*** does not apply to the instant case because the Commonwealth, in ***McKellick*** unlike the instant case, presented testimony regarding the creation, operation, and retrieval of the recordings at issue. ***See*** Appellant's Brief at 21-22 (citing ***McKellick***, 24 A.3d at 988-89).

By contrast, Appellant asserts that no witness in this case testified concerning the recording system for the videos at issue, the manner in which the videos were created, or how police obtained the recordings. ***See*** Appellant's Brief at 21-22. Rather, Officer Crawford "merely responded affirmatively when the prosecutor asked him if the 'Chester Police Department' later obtained the video surveillance from the shop." ***Id.*** at 22. Accordingly, Appellant maintains the trial court improperly admitted the surveillance videos and that the error was not harmless because the recordings constituted the primary evidence of the alleged assault. ***See id.*** We disagree.

Upon review, we find that the trial court did not abuse its discretion by admitting the Commonwealth's surveillance videos. ***See Ganjeh***, 300 A.3d at 1091. Officer Crawford's testimony and the video time stamps confirmed that

on May 23, 2023, he responded to a call regarding a convenience store where there was a fight. *See* N.T. Trial, 11/13/24, at 7. For each surveillance video, he testified that the video was a fair and accurate representation of the store at the time and place at which he responded, and that the Chester Police Department received the video footage from the store. *See id.* at 9-10. Moreover, Officer Crawford was present for a portion of all the videos. *See id.* at 13, 32-33.

We understand Appellant's contention that Officer Crawford was not present for the entirety of the videos and cannot authenticate the videos pursuant to Rule 901(b)(1). *See* Appellant's Brief at 19. However, we also find that Officer Crawford's testimony supported the premise that the surveillance videos were what they "claimed to be" under Rule 901(b)(4).[8] He identified where each video was taken from in the store. *See* N.T. Trial, 11/13/24, at 12, 25-26, 28-29. Then, he identified the individuals in each video. *See id.* at Further, Officer Crawford also identified items throughout the convenience store, which he personally observed in the store at the relevant time, such as the metal rod holding chips, the metal canned goods, and the ice cream cooler. *See id.* at 16-17, 29, 33. Therefore, we conclude that Officer Crawford

_____

[8] The trial court stated that the videos were authenticated pursuant to Rule 901(b)(1). *See* Trial Court Opinion, 8/28/25, at 5-6. However, it "is well[-]settled that where the result is correct, an appellate may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Lehman*, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (citations omitted). Based on our review, we find the authentication of the videos is supported by Rule 901(b)(1) and (b)(4).

properly authenticated the video portion in which he was not present by providing ample circumstantial evidence pursuant to Rule 901(b)(4). **See** Pa.R.E. 901(b)(4).

Further, Appellant's contention that the dissent in **McKellick** should apply to the facts of this case is unpersuasive. In **McKellick**, our Court addressed the authentication of a police dashboard camera video because the trooper who recorded the encounter with defendant was deceased and was unavailable to testify regarding the events depicted. **See McKellick**, 24 A.3d at 986. The Commonwealth authenticated the recording through a police corporal who testified regarding the process of downloading the recording and explained what the recording portrayed. **See id.** at 988-89. Our Court held that that the video recording constituted demonstrative evidence because it was authenticated under Rule 901(a). **See id.** at 989.

Unlike in **McKellick**, here, the Commonwealth did not exclusively rely upon evidence concerning the recording process to establish authenticity. **See McKellick**, 24 A.3d at 989. Rule 901(b) provides a non-exhaustive list of all the possible methods for authentication. **See** Pa.R.E. 901(b). As explained above, we determined that Officer Crawford authenticated the surveillance videos pursuant to Rule 901 subsections (b)(1) and (b)(4). **See supra** at 9-10. Thus, Appellant's reliance on now-Justice Donahue's dissenting opinion, which criticized the admission of the dashboard camera video as substantive evidence under Rule 901(b)(1), is unapplicable and unpersuasive. **See McKellick**, 24 A.3d at 993 (Donohue, J., dissenting); **Davis**, 17 A.3d at 398.

- 11 -

Further, it's well-settled law that the Commonwealth was *not* required to present the creator for the video to establish authenticity. **See Impellizzeri**, 661 A.2d at 428. Accordingly, we find no abuse of discretion by the trial court in its decision to overrule Appellant's objection to the authentication of the videos, and her first issue is meritless.

In Appellant's issues two through four, she challenges the sufficiency of evidence supporting all her convictions. **See** Appellant's Brief at 23-26. We begin by noting our standard of review for sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. Gause**, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted).

- 12 -

In issue two, Appellant challenges her conviction of REAP and argues that she did not place the victim in danger of death or serious bodily injury. *See* Appellant's Brief at 24.

A person who "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury" is guilty of REAP. 18 Pa.C.S. § 2705. "Serious bodily injury" is defined by statute as "bodily injury which creates a substantial risk of death or which causes permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Appellant argues that if our Court "considers the video recordings that were admitted over [her] objections, the actions depicted in them do not evidence conduct which placed the [] victim in danger of death or serious bodily injury." Appellant's Brief at 24. She points out that, although the videos show that Appellant hit the victim multiple times in the body, the victim showed no bruising, no redness, and that the victim did not "appear to be acting as if she [was] injured." *Id.* Moreover, she notes that Officer Crawford did not testify or personally observe any injury on the victim. *See id.* Therefore, Appellant asserts that her conviction for REAP should be vacated. *See id.* We disagree.

Upon review of the record, we find that the evidence, viewed in the light most favorable to the Commonwealth, showed that Appellant placed the victim in danger of serious bodily injury. *See Gause*, 164 A.3d at 540-41. The

Commonwealth, through the surveillance videos, showed that Appellant delivered multiple strikes to the victim's head, struck the victim in the head with a metal rod, and hit the victim on her head with metal canned goods. *See* N.T. Trial, 11/13/24, at 33. Additionally, Appellant's argument that the Commonwealth had to provide evidence of the victim's injuries is incorrect. *See* Appellant's Brief at 24. In **Commonwealth v. Cordoba**, 902 A.2d 1280 (Pa. Super. 2006), we held that the Commonwealth does not need to prove that Appellant caused serious bodily injury, but rather only that her conduct created the risk of causing that type of injury. **See Cordoba**, 902 A.2d at 1288-89 ("The Commonwealth need only establish that the defendant's conduct placed or *may have placed* another in danger of serious bodily injury or death.") (citation omitted).

Furthermore, the evidence was specifically credited by the trial court, and we will not disrupt the trial court's findings. **See** Trial Court Opinion, 8/28/25, at 8-10; **see also Commonwealth v. Treece**, 161 A.3d 992, 994 (Pa. Super. 2017) ("[T]he fact-finder is free to believe all, part[,] or none of the evidence presented.") (citation omitted). Accordingly, we find there was sufficient evidence to support Appellant's conviction of REAP and her second issue is meritless.

Next, Appellant challenges the sufficiency of evidence for her simple assault conviction. **See** Appellant's Brief at 25-26.

The offense of simple assault requires that the Commonwealth prove that the defendant either attempted to cause bodily injury to another person or intentionally, knowingly, or recklessly caused bodily injury to another person. *See* 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is defined by statute as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

Here, Appellant concedes that if we find the video recordings were not admitted in error, then she "does not have further argument as to the conviction for simple assault." Appellant's Brief at 26. Accordingly, since we found that the trial court did not err in its discretion by admitting the surveillance videos, we find Appellant's third issue meritless.

Finally, Appellant challenges the sufficiency of evidence sustaining her harassment conviction. *See* Appellant's Brief at 27-28.

"A person commits the crime of harassment when, with intent to harass, annoy[,] or alarm another, the person…strikes, shoves, kicks[,] or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S. 2709(a)(1).

In similar fashion to Appellant's sufficiency argument for simple assault, Appellant concedes that, if we find the trial court did not err in admitting the surveillance videos, she "does not have further argument with regard to the sufficiency of evidence to support the charge of harassment." Appellant's Brief at 28. Accordingly, since we explained above that the trial court did not err in admitting the surveillance videos, we find Appellant's fourth issue meritless.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/7/2026